IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SAUNDERS FAMILY VENTURES, LLC, et al., | § <br> § <br> § |
| Plaintiffs-counterdefendants, | § <br> § |
| VS. | § Civil Action No. 3:15-CV-2094-D <br> § <br> § |
| DOMESTIC NATURAL RESOURCES, LLC, | § <br> § <br> § |
| Defendant-counterplaintiff, | § <br> § <br> § |
| and | § <br> § |
| RICHARD OLIVERI, ERICK BOYLE, RYAN BOYLE, and BRICE LeBLANC, | § <br> § <br> § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

In this action alleging federal and Texas securities fraud and related claims arising out of an oil-drilling joint venture, defendants move for summary judgment and one plaintiff moves for partial summary judgment. For the reasons that follow, the court grants defendants' motion in part and denies it in part, and it denies the plaintiff's motion for partial summary judgment.

I

This lawsuit is brought by plaintiffs-counterdefendants Saunders Family Ventures, LLC ("Saunders"), Monticello Capital Partners, LLC ("Monticello"), and Samuel J. Snead, Jr. ("Snead") against defendant-counterplaintiff Domestic Natural Resources, LLC

("Domestic") and defendants Richard Oliveri ("Oliveri"), Erick Boyle ("Erick"), Ryan Boyle ("Ryan"), and Brice LeBlanc ("LeBlanc").[1]  It arises from investments that plaintiffs made in the Jordan Celeste Prospect #1 ("JCP#1"), a joint venture in Kent County, Texas.[2] Domestic is the managing venturer of JCP#1, and Oliveri, Erick, Ryan, and LeBlanc were managers or employees of Domestic.  Between late 2013 and late 2014, defendants solicited investments from plaintiffs to develop the JCP#1 into a full oil-drilling operation.  Plaintiffs received marketing materials, including a detailed confidential information memorandum ("Confidential Memorandum"), that laid out the parameters of the venture.  The Confidential Memorandum noted that the JCP#1 was divided into 35 units sold at $44,700 per unit.  Each unit entitled the holder to a 2.82% working interest and a 1.28% net revenue interest ("NRI") in JCP#1.  After receiving the Confidential Memorandum, plaintiffs signed a venture agreement ("Venture Agreement") with Domestic to govern the relationship.  Each plaintiff invested separately in the venture and only later discovered the identities of the others.

Plaintiffs allege that the entire venture—from solicitation to execution—"was riddled with fraud[.]"  Ps. Br. 16.  Snead contends that he was first brought into the venture by Bill

---

[1]Although only Domestic has asserted a counterclaim, plaintiffs have answered the counterclaim as if it is asserted by all five defendants.  Because only Domestic is a counterplaintiff, the court will refer only to Domestic in that capacity.

[2]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

Steinmetz ("Steinmetz"), who Snead alleges portrayed himself as someone who had already invested in JCP#1. Snead initially invested $100,000 for 2.73 units in JCP#1, corresponding to an NRI of 3.5%. After Snead made his investment, Domestic continued to solicit him to make a larger investment that would grant him a higher tier of ownership. Snead agreed to invest the additional sum of $200,000 in exchange for "20% of the total gross processed"[3] from the JCP#1. Snead App. 84. Snead believed that this entitled him to a payout calculated as 20% of all proceeds from the well, to be determined before other investors' interests were calculated.

After Snead made this additional investment, defendants sent him a letter that incorrectly stated his interest in the JCP#1. Snead called defendants to request an explanation, and he alleges they never responded. Domestic also sent Snead various documents, including a June 1, 2015 Certificate of Ownership, that stated that he had a 15% NRI in the JCP#1. Internal records submitted by defendants show, however, that Snead has the equivalent of a 20% NRI. Domestic contends that the distinction between NRI and total gross processed is immaterial.

In contrast to Snead, Saunders and Monticello did not invest in a higher tier; they contend that defendants did not disclose that there was an additional tier of investors. Saunders and Monticello invested $60,000 and $42,857.14, respectively, and according to the JCP#1's books, they were given larger shares of NRI than under the terms set forth in the

---

[3]Snead contends that "processed" is a scrivener's error that should read "proceeds." Snead Br. 4.

Confidential Memorandum.

According to plaintiffs, various issues arose with the operation of the JCP#1 after they made their initial investments.[4]  Domestic decided to use BDI Operating, LLC ("BDI") as the drilling contractor, who was responsible for the actual operation of the JCP#1 well, and plaintiffs allege that they were not told that Oliveri, Erick, and Ryan are the only managing members of BDI.  Defendants contend that they did disclose this to Snead, and, in any event, that this information was readily available through state corporate records.  Plaintiffs also allege that defendants solicited additional contributions to drill additional wells based on misrepresentations and forgeries.  Defendants deny this accusation.

Plaintiffs seek to recover from defendants on twelve causes of action alleged in their amended complaint.  Domestic has filed a contingent counterclaim against plaintiffs, seeking to recover under the Venture Agreement its attorney's fees, expert witness fees, and all costs of the proceeding, should it prevail in this lawsuit.  Snead moves for partial summary judgment on plaintiffs' third cause of action ("count III") as it pertains to his investment in JCP#1.  Defendants move for summary judgment on all 12 of plaintiffs' claims.  Both motions are opposed.

---

[4]Plaintiffs allege throughout their amended complaint and briefing that there were many other incidents of fraud.  The court only recounts those allegedly fraudulent acts and omissions that are relevant to this memorandum opinion and order.

II

A

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim or defense for which it will have the burden of proof, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that it must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603

- 5 -

F.Supp.2d 914, 923–24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at \*10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

B

The national and local summary judgment rules dictate how a party who opposes summary judgment must cite the summary judgment record. Fed. R. Civ. P. 56(c)(1)(A) provides, in relevant part: "A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Rule 56(c)(3) states, in relevant part: "[t]he court need consider only the cited materials[.]"  Rule 56(e) provides:

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it[.]

And N.D. Tex. Civ. R. 56.5(c) states: "[w]hen citing materials in the record, as required by Fed. R. Civ. P. 56(c)(1)(A) or (B), a party must support each assertion by citing each relevant page of its own or the opposing party's appendix."

In sum, "Rule 56 . . . saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment, and does not

- 6 -

impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *2 n.3 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (quoting *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012 ).  "[T]he court is not obligated to comb the record in search of evidence that will permit a nonmovant to survive summary judgment." *Id.* (citing *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006)).

## C

All parties have filed separate statements of facts that they contend are required by rule.  The court disagrees.  The applicable Federal Rules of Civil Procedure do not require that such statements be filed.  This court's local civil rules at one time provided that "[a] motion for summary judgment must list in numerical order: (1) the undisputed facts upon which the motion relies; and (2) the issues of law."  N.D. Tex. Civ. R. 56.1(a) (1997) (amended 1998).  And they required that "[a] response to a motion for summary judgment must list in numerical order: (1) the disputed facts upon which the response relies; and (2) the disputed issues of law."  N.D. Tex. Civ. R. 56.1(b) (1997) (amended 1998).  But these requirements were abrogated effective April 15, 1998.  Since then, the court's local summary judgment rules have limited the summary judgment filings to motions, responses, replies, briefs, and appendixes. The Rules neither require nor permit separate listings of disputed and undisputed issues of fact and law or the filing of pleadings like the parties' statements of fact. Moreover, N.D. Tex. Civ. R. 56.7 provides that "[e]xcept for the motions, responses, replies,

- 7 -

briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence." Accordingly, the court has not considered any arguments contained in the parties' statements of facts.

### III

The court turns first to the grounds of defendants' motion that are addressed to plaintiffs' first ("count I") and second ("count II") causes of action. In count I, plaintiffs allege a claim for fraud in connection with the purchase or sale of securities, in violation of § 10(b) the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. In count II, they allege that Oliveri, Erick, Ryan, and LeBlanc are liable under the federal securities laws as control persons.

### A

"Section 10(b) and Rule 10b-5 prohibit making any material misstatement or omission in connection with the purchase or sale of any security." *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 681 (5th Cir. 2015) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, ___ U.S. ___, 134 S.Ct. 2398, 2408 (2014) (internal quotation marks omitted)). To recover under § 10(b) and Rule 10b-5, plaintiffs must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *John Fund*, 134 S.Ct. at 2407 (citations and internal quotation marks omitted).

B

Plaintiffs allege that defendants are liable under § 10(b) and Rule 10b-5 because they made various "untrue statements of material fact and/or omissions [of] material fact upon which Plaintiffs reasonably relied." Am. Compl. ¶ 203.   They assert that various misrepresentations and omissions occurred both before and after they invested in the JCP#1. Although the court is unable to discern from plaintiffs' briefing all of the specific misrepresentations on which they rely,[5] it need not analyze each potential misrepresentation or omission because plaintiffs have failed to submit sufficient evidence to enable a reasonable trier of fact to find that defendants acted with scienter.[6]

To establish under § 10(b) and Rule 10b-5 that a defendant acted with scienter, the plaintiff must prove that the defendant made a misrepresentation or omission with "an intent to deceive, manipulate, or defraud [or with] severe recklessness[.]" *Southland Sec. Corp*. v. *INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (quoting *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961-62 (5th Cir. Apr. 1981) (en banc)) (internal quotation marks omitted).   To amount to severe recklessness, a misrepresentation or omission must be "an

_____

[5]For example, in their response, plaintiffs discuss five "egregious examples of fraud" under the heading "Material Facts Remain That Preclude Summary Judgment," but they do not adequately tie these examples to a specific basis for their claim.  Ps. Br. 8-15.

[6]Although plaintiffs submitted a substantial appendix, their briefing often fails to address the elements of their claims, or fails to cite to the record to support conclusory assertions.  Accordingly, where the court states in this memorandum opinion and order that plaintiffs have failed to submit evidence sufficient to meet their summary judgment burden, the court is concluding that plaintiffs have failed to comply the requirements discussed *supra* at § II(B).

- 9 -

extreme departure from the standards of ordinary care," and must present "a danger of misleading buyers or sellers which is either known to the defendant[s] or is so obvious that the defendant[s] must have been aware of it." *Broad*, 642 F.2d at 961-62. "For purposes of determining whether a statement made by [a] corporation was made by it with the requisite Rule 10(b) scienter . . . [the court] look[s] to the state of mind of the individual corporate official or officials who [made, issued, or approved] the statement[.]" *Southland*, 365 F.3d at 366.

The only possible evidence of scienter that plaintiffs have submitted is that defendants failed to disclose to Snead that Steinmetz "was really a paid agent of Defendants." Ps. Br. 9 (the "Steinmetz Misrepresentation").[7]   Plaintiffs point to financial records and communication records as proof that Steinmetz was not a co-investor, as Snead believed. Therefore, according to plaintiffs, Steinmetz misrepresented the investment opportunity and fraudulently induced Snead to invest.  Plaintiffs maintain that "[a] rational trier of fact could infer from this evidence that Steinmetz was a shill, posing as an enthusiastic customer to rope in investors.  Steinmetz's covert arrangement with the Defendants is evidence that Defendants acted with a mental state embracing an intent to deceive, manipulate, or defraud[.]" *Id.*  Plaintiffs appear to aver that the Steinmetz Misrepresentation is sufficient to meet the scienter requirement for all misrepresentations or omissions associated with their

---

[7]Plaintiffs do not explain how this evidence, which appears to be limited to Snead, satisfies the scienter requirement for any misrepresentation or omission that Domestic allegedly made to Saunders or Monticello.

investments in the JCP#1.  The court disagrees.

To establish that the defendant in question is liable under § 10(b) and Rule 10b-5, plaintiffs must prove for each alleged misrepresentation or omission that the defendant acted with scienter.  *See Wu v. Tang*, 2011 WL 145259, at *5 (N.D. Tex. Jan. 14, 2011) (O'Connor, J.) ("Plaintiffs must show the requisite level of scienter for each claim."); *see also Southland*, 365 F.3d at 373 (analyzing each alleged misrepresentation individually to determine whether plaintiffs sufficiently pleaded facts to raise strong inference of scienter). At most, plaintiffs have submitted evidence that the Steinmetz Misrepresentation would enable a reasonable trier of fact to find scienter for a misrepresentation of Steinmetz's relationship with Domestic.  The court therefore concludes that a reasonable trier of fact could not find that defendants acted with scienter as to any other misrepresentation or omission on which plaintiffs rely.

C

The court considers next whether plaintiffs have adduced sufficient evidence for a reasonable trier of fact to find that plaintiffs have satisfied all the other § 10(b) and Rule 10b-5 elements with regard to the Steinmetz Misrepresentation.

As noted above, liability under § 10(b) and Rule 10b-5 requires that the alleged misrepresentation or omission be material.  "Materiality is determined by evaluating whether there is '[a] substantial likelihood that' the false or misleading statement 'would have been viewed by the reasonable investor as having altered the "total mix" of information made available.'"  *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 418 (5th Cir. 2001) (alteration in

original) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).  "Put another way, [a] statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest."  *ABC Abritrage Pls. Group v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002) (alteration in original) (quoting *R&W Tech. Servs. Ltd. v. Commodity Futures Trading Comm'n*, 205 F.3d 165, 169 (5th Cir. 2000)) (internal quotation marks omitted).

Plaintiffs have not produced any evidence that would enable a reasonable trier of fact to find that Snead considered, or that a reasonable investor would have considered, Steinmetz's relationship with Domestic to be "information important in making a decision to invest." *Id.*  Plaintiffs rely in their response on conclusory statements when addressing the element of materiality.  Accordingly, the court concludes that plaintiffs have failed to produce any evidence that would enable a reasonable trier of fact to find that defendants violated § 10(b) of the Exchange Act or Rule 10b-5 based on the Steinmetz Misrepresentation, and the court grants summary judgment dismissing count I.

D

Plaintiffs seek in count II to hold Oliveri, Erick, Ryan, and LeBlanc liable as control persons for the § 10(b) and Rule 10b-5 violations alleged in count I.  Because the court concludes that a reasonable trier of fact could not find a § 10(b) or Rule 10b-5 violation based on the alleged misrepresentations and omissions on which plaintiffs rely, Oliveri, Erick, Ryan, and LeBlanc cannot be held liable as control persons. *See Southland*, 365 F.3d at 383 ("Control person liability is secondary only and cannot exist in the absence of a

- 12 -

primary violation.") (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 n.8 (5th Cir. 1996)).  Accordingly, the court grants summary judgment dismissing count II.

IV

The court now considers plaintiffs' third ("count III") and fourth ("count IV") causes of action.  In count III, plaintiffs bring a claim for securities fraud under the Texas Securities Act, Tex. Rev. Civ. Stat. Ann. art. 581-33A (West 2015).  In count IV, they bring a claim for control person liability under article 581-33F.  Defendants and Snead cross-move for summary judgment on count III, and defendants move for summary judgment on count IV. Because Snead and the other plaintiffs rely on different arguments, the court will consider Snead's claims separately.

A

The Texas Securities Act provides:

> [a] person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security.

*Id.* at art. 581-33A-2.  Unlike a claim brought under § 10(b) of the Exchange Act and Rule 10b-5, "an article 581-33 claim does not require scienter[.]"  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343-344 (5th Cir. 2008) (internal quotation marks omitted).  Instead, plaintiffs need only prove that a security was sold by means of (1) an untrue statement of

- 13 -

material fact or (2) an omission of a material fact necessary to make the statement not misleading.  Tex. Rev. Civ. Stat. Ann. art. 581-33A-1; *see also, e.g.*, *Tex. Cap. Sec., Inc. v. Sandefer*, 58 S.W.3d 760, 776 (Tex. App. 2001, pet. denied).[8]  Under Texas law, as under § 10(b) of the Exchange Act and Rule 10b-5, "[a]n omission or misrepresentation of fact is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding to invest." *Billitteri v. Sec. Am., Inc.*, 2010 WL 6785484, at *6 (N.D. Tex. July 26, 2010) (Furgeson, J.) (citing *Aegis Holding Ins. Co. v. Gaiser,* 2007 WL 906328, at *6 (Tex. App. Mar. 28, 2007, pet. denied)) (internal quotation marks omitted).

B

The court first considers Snead's claim under the Texas Securities Act.  Snead contends in his motion for partial summary judgment that defendants misrepresented the expected rate of return on his investment in the JCP#1.  He cites a discrepancy between the agreed rate of 20% "gross processed," which he contends induced him to make the additional investment in the JCP#1, and the 15% or 20% NRI that Domestic appears to recognize. Domestic responds that it has honored the agreed rate, and that, even if it has not, any difference between the agreed interest and the amount of interest Domestic recognizes is immaterial.

The court concludes that there is a genuine fact issue concerning whether defendants

---

[8]This prima facie case is subject to a "reasonable care" defense.  *See* Tex. Rev. Civ. Stat. Ann. art. 581-33A-2.

made  an untrue statement of material fact.[9]  It also holds that Snead has not met his heavy

burden to establish beyond peradventure that he is entitled to recover on this claim.

Accordingly, the court denies Snead's motion for partial summary judgment, and it grants

defendants' motions for summary judgment, except to the extent Snead's claim relates to

defendants' alleged misrepresentation of Snead's rate of return on his investment in the

JCP#1.

C

Saunders and Monticello also appear to assert claims under the Texas Securities Act,

although, as with plaintiffs' federal claims, it is unclear from plaintiffs' summary judgment

response which specific misrepresentations or omissions they rely on.  *See supra* note 5.  In

the amended complaint, plaintiffs allege that Saunders and Monticello

> would not have invested in the JCP#1 if Defendants had
> disclosed the material fact that a special class of investors had
> already been granted a 20% interest in "gross proceeds" from
> the JCP #1 such that the respective [NRIs] of [Saunders],
> [Monticello] and the other ordinary Unit holders were going to
> be calculated and paid from a base amount which had already
> been reduced by 20% of gross proceeds.

Am. Compl. ¶ 81.  Beyond mere conclusory and speculative statements, Saunders and

Monticello have not introduced any evidence that would enable a reasonable trier of fact to

---

[9]"When this court denies rather than grants summary judgment, it typically does not
set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall.
Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing
*Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19,
2003) (Fitzwater, J.)).

find that any other misrepresentation or omission was material, which is an essential element of the Texas securities fraud claim.[10] Nor have plaintiffs introduced any evidence that would enable a reasonable trier of fact to find that a reasonable investor would have considered any of the possible alleged misrepresentations or omissions important to a decision to invest. Accordingly, the court holds that plaintiffs' claim in count III with respect to Saunders and Monticello is confined to defendants' alleged omission of Snead's status in the JCP#1, i.e., that Saunders, Monticello, and other ordinary would be paid from a base amount that had already been reduced by 20% of gross proceeds.

Saunders and Monticello have failed, however, to submit any evidence that would enable a reasonable trier of fact to find that this omission was material to them or that it would have been material to a reasonable investor. Their only discussion of this is in the foregoing passage found in the amended complaint. But unsworn pleadings do not constitute summary judgment evidence. *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.). Accordingly, the court concludes that a reasonable trier of fact could not find in favor of Saunders and Monticello for a violation of § 33A of the Texas Securities Act, and it grants summary judgment dismissing count III as to Saunders and Monticello.

---

[10]For example, plaintiffs' only discussion of materiality of the alleged omission of defendants' relationship with BDI states: "This was a material omission in the form of a failure to disclose a related party transaction—and it gave [Domestic] incentive to misapply funds and continue to drill irrespective of whether any of the wells produced paying quantities of oil." Ps. Br. 15.

D

In count IV, all plaintiffs allege control person liability under the Texas Securities Act.  Tex. Rev. Civ. Stat. Ann. art. 581-33F-1 provides:

> [a] person who directly or indirectly controls a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer, unless the controlling person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

*Id.*

Because Snead can only recover in count III under § 33A of the Texas Securities Act if he proves that the rate of return on his investment in the JCP#1 was misrepresented, Oliveri, Erick, Ryan, and LeBlanc cannot be held liable to Snead as control persons under § 33F-1 on any other basis.  And because in count III Saunders and Monticello cannot recover at all from defendants under § 33A, Oliveri, Erick, Ryan, and LeBlanc cannot be held liable to them under § 33F-1.  Accordingly, count IV is dismissed, except to the extent that Snead seeks to hold Oliveri, Erick, Ryan, and LeBlanc liable as control persons for the alleged misrepresentation of the rate of return on his investment in the JCP#1.[11]

---

[11]Defendants appear to acknowledge that they are not entitled to summary judgment holding that Oliveri and Erick are not control persons of Domestic.  *See* Ds. Br. 10 ("Moreover, [Ryan] and [LeBlanc] should be dismissed from all causes of action because they are not control persons.").  Even so, Oliveri and Erick cannot be held liable under § 33F-1 in count IV as control persons unless plaintiffs prove their claim under § 33A in count III.

V

The court now turns to plaintiffs' sixth cause of action ("count VI") for breach of fiduciary duty.

A

As a threshold matter, the court must determine whether defendants have met their initial burden of pointing the court to the absence of evidence sufficient to support each essential element of plaintiffs' claim for breach of fiduciary duty. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 27 F.3d at 1075.

Defendants contend with respect to plaintiffs' breach of fiduciary duty claim:

> [t]his claim to[o] should fail because the alleged misrepresentations are not material, there is no evidence of scienter, Plaintiffs could not have justifiably relied on the alleged misrepresentations, and the cause of Plaintiffs' unrealized loss is that the Well is a poor producer—a risk Plaintiffs knowingly assumed before they invested.

Ds. Br. 11. Most of this language is copied directly from defendants' challenge to plaintiffs' claims under the Texas Securities Act. Were the elements of the breach of fiduciary duty claim and the Texas Securities Act claim the same or substantially similar, this might be sufficient to alert the court and plaintiffs to the elements of the breach of fiduciary duty claim that defendants challenge. But "[u]nder Texas law, '[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's

- 18 -

breach must result in injury to the plaintiff or benefit to the defendant.'"   *Days Inn Worldwide, Inc. v. Sonia Invs.*, 2007 WL 1188028, at *3 (N.D. Tex. Apr. 23, 2007) (Fitzwater, J.) (alteration in original) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. 2006, pet. denied)).   Defendants have failed to point the court to the absence of evidence of any essential element of plaintiffs' breach of fiduciary duty claim.   Rather, they simply state that there is no evidence of materiality, scienter, justifiable reliance, or causation.   Defendants have therefore failed to shift the burden to plaintiffs, and the court concludes that they are not entitled to summary judgment dismissing plaintiffs' breach of fiduciary duty claim on this basis.

B

Alternatively, defendants move for summary judgment on the affirmative defense that the Venture Agreement shields them from liability.   Because defendants will have the burden of proof on this defense at trial, they must establish "beyond peradventure all of the essential elements of the . . . defense."   *Bank One, Tex., N.A.,* 878 F. Supp. at 962.

Defendants rely on ¶ 11.8 of the Venture Agreement, which provides:

> Limitation of Damages and Liability. THE MANAGING VENTURER AND ITS DIRECTORS, OFFICERS, AGENTS AND ATTORNEYS WILL NOT BE LIABLE TO THE VENTURE OR VENTURERS FOR ANY ACT OR OMISSION EXCEPT TO THE EXTENT OF ANY WILLFUL MISCONDUCT OR GROSS NEGLIGENCE OF THE MANAGING VENTURER OR SUCH PERSONS; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISION SHALL NOT BE CONSTRUED TO ELIMINATE A VENTURER'S DUTY OF LOYALTY, DUTY OF CARE OR OBLIGATION OF GOOD FAITH TO THE

VENTURE AND OTHER VENTURERS UNDER THE ACT.

Ds. App. 52.  Defendants maintain that, because plaintiffs have no evidence that defendants engaged in any willful misconduct or were grossly negligent, defendants cannot be held liable for breach of fiduciary duty.  The court disagrees.

Paragraph 11.8 of the Venture Agreement states that the requirement of willful misconduct or gross negligence cannot be construed to eliminate the fiduciary duties owed to other venturers.  The court therefore concludes that defendants have not met their burden to establish the elements of this affirmative defense beyond peradventure.  Accordingly, it denies defendants' motion for summary judgment as to count VI.

VI

The court next considers together defendants' challenges to plaintiffs' claims for breach of contract ("count IX"),[12] unjust enrichment ("count IX"),[13] and constructive trust ("count X").[14]

---

[12]"Under Texas law, [a] breach of contract claim requires proof of four elements: (1) the existence of a valid contract, (2) that [plaintiffs] performed [their] duties under the contract, (3) that the part[ies] [they are] suing breached the contract, and (4) that [plaintiffs] suffered damages as a result of the breach." *Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 832 (N.D. Tex. 2011) (Fitzwater, C.J.), *aff'd in part, rev'd in part on other grounds*, 838 F.3d 568 (5th Cir. 2016).

[13]"Texas courts of appeals have consistently held that unjust enrichment is not an independent cause of action, but is instead a theory upon which an action for restitution may rest." *Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 560 (N.D. Tex. 2009) (Fitzwater, C.J.), *aff'd sub nom. Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699 (5th Cir. 2011).

[14]Under Texas law, "[a] constructive trust is an equitable remedy used to prevent unjust enrichment." *Baxter v. PNC Bank Nat'l Ass'n,* 541 Fed. Appx. 395, 398 (5th Cir. 2013) (per curiam) (citing *Everett v. TK–Taito, LLC*, 178 S.W.3d 844, 859 (Tex. App. 2005,

Defendants rely on the same basis (i.e., the same language) as they did to move for summary judgment on plaintiffs' breach of fiduciary duty claim. *See supra* § V(A). The court concludes for the same reasons that defendants have failed to shift the burden to plaintiffs. The issues of materiality, scienter, justifiable reliance, and causation are not sufficiently related to the essential elements of the claims at issue, *see supra* notes 12-14, to shift the summary judgment burden to plaintiffs. Accordingly, the court denies defendants' summary judgment motion addressed to these claims.

VII

Defendants have sufficiently moved for summary judgment with respect to plaintiffs' claims for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2015) ("count V"),[15] common law fraud ("count VII"),[16] statutory fraud under Tex. Bus. & Comm. Code Ann.

---

no pet.)).

[15]Defendants contend that the joint venture interests that plaintiffs purchased are intangibles, not goods or services, and plaintiffs therefore do not qualify as consumers as necessary to trigger DTPA liability. *See Stroud v. Meister*, 2001 WL 1029529, at *3 (N.D. Tex. Aug. 22, 2001) (Lindsay, J.) ("The purchase of intangibles, such as securities, accounts receivable, commodity option contracts, and interests in limited partnerships, does not confer 'consumer' status.").

[16]Defendants contend that plaintiffs do not have evidence of materiality, an essential element of a claim for common law fraud. *See United States* ex rel. *Coppock v. Northrop Grumman Corp.*, 2002 WL 1796979, at *13 (N.D. Tex. Aug. 1, 2002) (Fitzwater, J.) (citing *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr. Inc*, 993 F.2d 1178, 1185 (5th Cir. 1993) (Texas law)).

§ 27.01 (West 2015) ("count VIII"),[17] detrimental reliance ("count IX"),[18] negligent misrepresentation ("count XI"),[19] and denial of right of access to partnership books and records ("count XII").[20]  In their response, plaintiffs did not substantively address defendants' contentions as to any of these claims.  Although plaintiffs' failure to respond to these grounds of defendants' motion does not permit the court to enter a "default" summary judgment on these claims, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman*, 945 F. Supp. at 1002 (citing *Solo Serve Corp. v. Westowne Associates*, 929 F.2d 160, 165 (5th Cir. 1991)).  Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting

---

[17]Defendants contend that plaintiffs do not have evidence that the contract actually effected the conveyance of real estate, as required under § 27.01.  *See Windsor Vill., Ltd. v. Steward Title Ins. Co.*, 2011 WL 11545169, at *5 (Tex. App. Mar. 17, 2011, no pet.) (mem. op.).

[18]Defendants contend that plaintiffs have no evidence of reliance.  Moreover, it is "far from clear that Texas courts recognize 'detrimental reliance' as a distinct cause of action." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010).

[19]Defendants contend that plaintiffs have no evidence that they justifiably relied on the alleged misrepresentation, as required for a claim of negligent misrepresentation under Texas law.  *See TIB–The Indep. BankersBank v. Canyon Cmty. Banks*, 13 F.Supp.3d 661, 669 (N.D. Tex. 2014) (Fitzwater, C.J.).

[20]Defendants contend that plaintiffs do not have evidence that they were ever denied access to the partnership's books and records.

- 22 -

> materials—including the facts considered undisputed—show
> that the movant is entitled to it[.]

Rule 56(e)(2), (3).  Accordingly, because plaintiffs have not raised genuine issues of material fact as to their claims for violations of the DTPA, common law fraud, statutory fraud under § 27.01, detrimental reliance, negligent misrepresentation, and denial of right of access to partnership books and records, the court holds that defendants are entitled to summary judgment dismissing these claims.

\*   \*   \*

For the reasons explained, defendants' motion for summary judgment is granted as to counts I and II.  It is granted as to count III, except as to Snead's claim that defendants misrepresented the rate of return on his investment in the JCP#1.  It is granted as to count IV, except to the extent that Snead seeks to hold Oliveri, Erick, Ryan, and LeBlanc liable as control persons for the alleged misrepresentation of the rate of return on his investment in the JCP#1.  It is granted as to counts V, VII, VIII, XI, and XII, and granted as to plaintiffs' detrimental reliance claim in count IX.  It is denied as to counts VI, IX (breach of contract and unjust enrichment claims), and X.  Snead's motion for partial summary judgment is denied.

**SO ORDERED**.

January 11, 2017.

_____

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 23 -